3-0-9-0-4-1-8 Illinois Department of Corrections Appellate Cross Appellate by Christopher Turner v. Kensley Hawkins Appellate Cross Appellate by David Simon Counselor, you may proceed. Thank you. Good morning, Your Honor, Counsel. May it please the Court. I am Christopher Turner, the Illinois System's Attorney General, here on behalf of the Appellant and Cross Appellate, the people of the State of Illinois, ex rel., the Illinois Department of Corrections. The Court should reverse the partial summary judgment granted in favor of the defendant, Kensley Hawkins, to the extent that the Circuit Court precluded the Department from attaching Mr. Hawkins' bank account to a satisfying part of judgment against Mr. Hawkins' recovery as incarceration costs under Criminal Code Section 376. The Court should reverse that partial summary judgment ruling because Criminal Code Section 376 expressly authorized the Department to recover Mr. Hawkins' incarceration costs from any property tangible or intangible in his name, which would include his bank account, as well as from any income or payments to Mr. Hawkins, which was from, quote, any other source whatsoever, unquote. And further, because the Criminal Code Section which the Circuit Court relied, Section 312.5, contains no language exempting savings traceable to prison compensation from a collection action under Section 376. Now, for purposes of my argument, I'm going to refer to the Code Section 376, under which the Department is pursuing this collection action, as the reimbursement statute, and the Code Section which the Circuit Court relied, Section 312.5, as the compensation statute. That is the section of the Criminal Code that authorizes the Department to pay compensation to inmates for work in the Correctional Employment Program. There are two issues related to this appeal and the cross-appeal. On the appeal, the issue is whether the Circuit Court erred when it held that the compensation statute precluded the Department from attaching Mr. Hawkins' bank account in order to recover the incarceration costs under the reimbursement statute. And the answer is yes, the Court did err. Each of the statute's plain language, as well as their common legislative purpose, reflect that the compensation statute, and in particular its offset provision which directed the Department to offset a portion of Mr. Hawkins' prison wages in order to contribute to his incarceration costs, was intended to set a floor contribution by working inmates and not impose a ceiling on the Department's later ability to recover inmates' assets, to recover such costs. Mr. Hawkins, on his cross-appeal, raises the issue of whether the Circuit Court erred by granting judgment against him for $455,203 in costs that the State spent to incarcerate Mr. Hawkins. And the answer to that is no, the Court did not err, for the plain terms of the reimbursement statute supported that judgment. Mr. Hawkins is an inmate currently in the custody of the Department at Stateville Prison. In particular, he was in the custody of the Department from 1983 through 2005. The Department filed this reimbursement action against Mr. Hawkins to recover the State's costs of incarcerating him during this 22-year period, some $455,953. In filing this action, the Department specifically identified and pursued a $11,000 bank account in Mr. Hawkins' name at the State Bank of Lincoln. Now, although the Circuit Court granted judgment in favor of the Department, it also granted a partial summary judgment in favor of Mr. Hawkins, holding that the Department could not satisfy that judgment with any monies from the bank account. The Court reasoned that the account consisted of compensation that Mr. Hawkins had earned in the Correctional Employment Program, and specifically found that the compensation statute's provision directing the Department to offset some of those wages to contribute to his incarceration costs conflicted with the reimbursement statute's mandate that the Department recover incarceration costs from an inmate's assets. Based upon this perceived conflict, the Circuit Court precluded the Department from recovering any costs from any funds traceable to prison compensation. The Circuit Court's holding of it is based on a conflict that doesn't exist, for it's a principle of statutory construction that where there is an alleged conflict between two statutes, the courts have a duty to interpret those statutes in a manner that would avoid any inconsistencies and give effect to both statutes' purposes. And here there is no conflict between the statutes, for they provide complementary procedures through which the Department can recover incarceration costs from an inmate. The reimbursement statute provides a civil legal proceeding, like a turnover action, a collection action, to the Department against the inmate. It imposes a duty on inmates to repay their incarceration costs to the state. It provides a method to calculate that debt, provides procedures through which the Department should collect those, and it specifically defines in subsection E3 the assets that may be attached to collect those costs. And it defines those assets extensively to include all property, tangible or intangible, in the inmate's name, as well as income or payments to the inmate from, quote, any other source whatsoever, unquote. Thus, under the plain terms of the reimbursement statute, Mr. Hoffman's bank account could be used to recover his incarceration costs. Now, the compensation statute, as I mentioned earlier, authorizes the Department to pay compensation to inmates in the work program. And it includes a provision that also further directs the Department to offset a portion of those wages to contribute to the inmate's incarceration costs. Hawkins asks this Court to twist that affirmative directive to the Department to offset a portion of those wages into an exemption to the reimbursement statute and those assets that can be recovered. But there's no language in the compensation statute which suggests there is such exemption or limitation on the reimbursement statute. Do you think they could take 100 percent of it while he was still incarcerated? No, Your Honor, they couldn't for two reasons. One is that it does say only for deducting under the compensation statute the offset is supposed to be a portion of wages. But more importantly, even under the reimbursement statute, they can't just turn around and take all the wages because just like any other Illinois debtor, it is subject to all the exemptions, the statutory exemptions in Illinois law. It includes various personal property exemptions for various types of property, and that includes the wildcard exemption which provides a $4,000 buffer for any debtor who can use his protection for their accumulated assets. So like other Illinois debtors, the inmate still can use the wages as he gets them and use it for his day-to-day needs, whether it's commissary needs or whatever he wants to buy there, or to support his family or his legal dependents. It's only when he's accumulated sufficient savings that then the department can file a collection action against those accumulated savings. Is it – oh, go ahead. No, no, no, thanks. Could you garnish his wages? Further – under the garnishment statute? Take 15 percent of his wages per payment period for the next month? Well, Your Honor, the – And that way you get 18 percent, right? Yeah, it would be – I guess if you had the 15 percent and the 3 percent under the other. Another method could – actually, I'm not sure if the department could use the garnishment statute. But you can't have an ongoing case that's got a judgment and just start garnishing his wages for the entire period of his incarceration. I believe so, Your Honor. I mean, I'm sure that's an issue in this appeal, but if they have a judgment against him, they could then try to enforce that judgment through a permanent garnishment. Yeah, I'm not – I can't think of any reason in the garnishment statute itself that would restrict the ability to do that. Is there any statutory section that could be used as a basis for the trial judge's rule? Well, the trial judge rule appeared to rely upon the compensation statute, both the offset provision, and then also there is a later sentence in the compensation statute as well, which said that all other wages should be deposited into the account that's regulated under the – I don't have the exact criminal code section, but it's the prison trust account. And read that is to provide some sort of prohibition or directive against the department from later seeking recovery. Now, there's nothing in the language of that provision that suggests it's a limitation or exemption on later collection actions. I mean, there's nothing explicit in the statute. There's nothing – no, there's nothing at all. I mean, that provision actually preceded the addition of the offset provision when it was added in 1989. That was just a directive that the department shall distribute the money basically to the inmate by depositing it directly into that regulated prison trust account versus providing cash, a check, or perhaps depositing it into another outside account of the prisoner's choice. They're just specifically making sure that that money would only go directly into the prison trust account. But, no, there's nothing that uses – in contrast to the other exemptions that the General Assembly has passed, where it almost – it always explicitly provides that the provision is providing an exemption to either a collection action, a judgment, or an attachment order. Usually they use the word actually exempt. I think there's one – one of the workers' compensation statutes says that no such property shall be subject to any collection action. But it usually – the – sorry, the General Assembly has always used very explicit language. Well, in contrast, the compensation statute doesn't have any such language. It doesn't have exempt or limit. It doesn't refer to collection actions of any kind. It just provides an affirmative mandate, no negative directive. Is there a policy argument? I'm sorry, I don't understand. Is there a policy argument against what you're saying? I mean, is there a – is there a reason that inmates should be able to keep this money? Mr. Hawkins argues that one – I mean, that first – that a few policy reasons. He argues that first they should be able to do it out of just – keep it out of fairness, but also out of the other – the other purposes of the – of the correctional employment program, in which to provide either skills or a sense of responsibility, and that what he speculates is that because their savings at a certain point can be attached down the road, that they will have – be deterred from participating in the program because they can reach these wages. Now, that's okay. I mean – and also he, I believe, argues that it might lead eventually to increased recidivism because either they don't have the skills or because they don't have less assets. Now, the common legislative goal of both of these statutes is to defray the state's costs. Now, his speculation is, first of all, it's based upon the fallacy that the department can take and is trying to take all of his wages. First of all, just like other debtors, he does – the inmates who participate in this program – and that's a minority of the inmates out there because it's a much – I mean, people are trying to participate in the program. They'd like to be a part of the program. The court – the state of Illinois can't provide it more widely. They – that they still can use these wages on a day-to-day basis. They can still use these wages for various purposes. The only thing this policy does is, like with Illinois debtors, is it does limit their ability to get significant savings at a certain point. I mean, there is a judgment for $455,000. It is, Your Honor, but that's been the judgment also of the legislature, that it is unfair to the taxpayers to have to bear that $455,000 cost because Mr. Hawkins committed his crime. So the – through both the enactment of the reimbursement statute and the offset provision of the compensation statute, the legislature has decided – has balanced the various competing interests here and decided that, yes, it's more important here that the taxpayers should be treated fairly and that if we can – that we can pursue a judgment to recover these incarceration costs from inmates. Now, it's always going to be true there's going to be some – you know, if you decrease the assets that an inmate has, you're going to make it more difficult for them whenever they would be released. I mean, that's always going to be the case. But the legislature has had this judgment here. And it will, as you said earlier, discourage them from working. Well, no, that's his argument. That's his speculation. We don't agree that it would necessarily deter him or anyone else from working. They still would work. They still would – After they've accumulated $4,000, that would seem to be more of a deterrent. Yes, Your Honor, it could be. I mean, it's certainly a valid public policy argument. I'm still not sure that it really would deter them because they still want to get these wages to use on a regular basis. But that's an argument that's really made today. But if you're sweeping it every time they get $4,001, if you're sweeping for that dollar, that excess money, what is the purpose? Well, the purpose of the statute is to reimburse the taxpayers, to be fair to the taxpayers, that they shouldn't have to bear the cost. Now, whether – yes, the purpose would be of working. I mean, why give them any wages at all, I guess I'm saying, or give them up to $4,000 and no more? I mean, why? Well, it could create a incentive for him to use that money elsewhere rather than to leave it in a savings account. Yes, we have seen that. Thank you, Your Honor. That he would – you know, that he would rather that – He would buy gum. He could or – Cigarettes. Or provide it to his family or legal dependents or to others or use it for other purposes. I don't know what all the purposes would be. So if he had distributed this money to relatives, let's say, of anything above $4,000, prior to your garnishing it, your attaching it, that would have been okay? If you could quickly get rid of it? Yes, Your Honor. I'm not worried about anything in the statute that would preclude him from providing it to his relatives, especially to any family or legal dependents. Could you track that money and get it from them? Again, that's not an issue on this appeal, but not that I'm aware of. No, Your Honor. Actually, I think in the internal administrative directives, which were in the exhibit below and for the deposition, the – I think that's one of the considerations there, that if an inmate actually has legal dependents who they're obligated to provide payment for, whether or not they're actually going to refer that case over to the Attorney General to pursue an action, that if they had significant legal obligations to support others, that that would factor into that decision. And is this a general policy? Yes, Your Honor. I mean, he's not the only one. He's not – I mean, I'm not aware of specific other cases, but, yes, by the way, it is the policy. What the administrative directive says below is testify – it was in the record below, I think around C245 to 250, and they're in the deposition transcript, that when the assets exceed – when the department discovers assets exceeding $10,000, that that's usually when they'll start to refer the case over to the Attorney General to pursue an action to achieve those assets. So the longer a person's incarcerated, the more – the odds would increase, I suppose, that the money would get swept. Assuming that they're working, yes, Your Honor. Assuming. Thank you, Your Honor. Thank you, Counsel. Counsel, you may proceed. Good morning, Your Honors. I'm David Simonton of Summershine, Nath, and Rosenthal, LLP, appearing pro hoc vicee on behalf of the appellee and class appellant, Kensley Hawkins. May it please the Court. The first issue I wanted to turn to is the discussion that the department's made about the canons of judicial interpretation and resolving conflicts among statutes, and in their brief about how the Court should go about interpreting the statute. While I think those are important to discuss, and I certainly will, it's important to remember that those canons are merely aids that the Court must use to determine the ultimate and deciding factor, which is the intent of the legislature. And as all the cases – the cases that both the department and Mr. Hawkins have cited show, that the cardinal rule of statutory construction is to determine the true intent of the legislature, and that the traditional rules must yield to the intent of the legislature if they would not further that result. If the statute's not ambiguous and there's clear and expressed language, you don't need any aids to interpretation there. Well, I would agree with you that if there is a statute that is clearly on point and there's no ambiguity in it, that you would not need to resort to extrinsic aids. However, that's not the situation here. What we have are two statutes, both part of the same general statutory scheme addressing dealing with prison employment, disposition of prisoner assets, attachment of their wages. And even in the Stewart v. Industrial Commission case, that was a case where the language was clear and explicit, and it would have required one result. The Supreme Court said, well, the legislature couldn't have intended that result, because the result factually would have been anomalous, and said that this anomaly shows that there's a latent defect – I'm sorry, a latent ambiguity in the statute itself, even as applied facially. But in this case, really what we have are two different statutes, and one of the statutes which counsel has referred to as the compensation statute, the 312-5 statute, I would argue is express and clear on its face and does give this court guidance as to how it should interpret both statutes. The 312-5 specifically states that the department can only offset a portion of the inmate's income toward the cost of incarceration, and directs that all other wages have to be deposited in the inmate's account. And that shows that the legislature did not intend for all of the assets to be given back to the state in a reimbursement action. And to further illustrate that fact, the statute also gives the department the discretion to set the rate for reimbursement. And the department exercised that discretion by setting a rate of 3%. That's completely inconsistent with the idea that the statute gave them the authority to take it all back. Why not set it at 100%? Why not set it at 50% or 60%? Or for that matter, as has been suggested by this court, why not just say you can get $4,000 for the wild card, and after that you're working for free, or give it all back to us? Do you think that might have something to do with the behavior of prisoners in prison if you start taking all their money? Absolutely. I think in two respects. I think that number one, as the legislature discussed in the debate for enacting the offset provision, part of the idea is one of the quotes that Senator Schaffer, I believe, used was to teach them the work ethic of you work a day and you get paid for a day. A work ethic, you go into work, you get paid, and you can enjoy and realize the tangible benefits from that, including saving the money to use elsewhere. Even people with strong work ethics have to pay their debts, right? That is correct. And in this case, what the state has done is said that if you work in prison, we will deduct 3% of what you make to deframe the cost of your incarceration. And I agree with you that people have to pay their debts. However, it's not a situation like the wage garnishment or the attachment statutes. This is a case where there's a war in the state, where the state has a public policy, an express public policy, of trying to establish a good work ethic, of trying to rehabilitate individuals, reduce the recidivism rate. Those are goals that the prison employment system is designed, expressly set up to further and promote. And interpreting what's been called the reimbursement statute, 376, to allow the state to take it all back as soon as they get a dime over $4,000 would discourage that and would undercut the goal behind the entire system. But once you take it out of the prison trust account and send it outside and put it in a bank, I mean, isn't it just money? Isn't it just fungible dollars as opposed to wages? Well, I think the source still remains the wages. I mean, here in this case, it was undisputed that 100% of what was in Mr. Hawkins' account, the $11,000 that he accumulated over 20 years or whatever of working, you know, a couple dollars an hour or whatever, all came from prison employment. So whether we say it's prison wages or just fungible dollars, the source of it was certainly the prison wages. But also I think the amount of it and what's there also speaks to another issue, something that the Court has alluded to, the idea that it would be okay. You could have this $11,000, you could have $4,000, or you could squander it away on cigarettes. As counsel submitted, that you could go to the commissary and spend it on what you want. Is that really the lesson that we want to teach prisoners? That you should spend the money as soon as you get it because if you go a dime over $4,000, the state's going to sweep in and take it all. And also with a $4,000 wild card, one thing that I should mention, it's important to remember that in this case the state, I believe, did not originally automatically deduct the $4,000 wild card exemption. That was found applicable by the circuit court. And it's questionable whether that's going to be automatically deducted from every account. I don't think perhaps counsel could speak to that, but I don't believe that's the Department's practice. That's something that Mr. Hawkins here was able to assert with the assistance of counsel. It may not be something that every prisoner who's fortunate to be able to obtain counsel may be able to rely on. So it's not necessarily the policy isn't in place, let's give them $4,000 and take everything else. It's let's wait until they get enough money, until they get on the radar screen. I believe the record shows it was $10,000 that sort of triggered the machinery inside the Department to start looking for recovery and then try to take it all. So, you know, and I think that what it does is it creates not only a disincentive to work, but also a very cynical attitude towards the products of labor, that after 20 years of saving and the day that you, you know, that you get released, you'd be able to use this money to start your new life, to become a productive member of society, to use these new skills that you've honed to find out that, oh, actually I have to give 100% of it back. That person is not, number one, they're not going to have the funds to start their new life. They're going to have a huge judgment apparently against them, and they're not going to have the correct proper attitude towards the value of work. I feel that way every time I pay my federal income taxes, but, you know, I still got to pay them. I understand that, and in this case, however, Mr. Hawkins has paid at the rate determined by the Department, which the Department sets in its discretion. There's nothing to prevent the Department from setting a higher rate. Is there any limitation in 3-12-5 saying the Department can't pursue under 376 an attachment? There's no limitation in the one section versus the other section, is there? There is no express reference in either section to the other, and I think that what Mr. Hawkins, what our position is, is that you have to read the statutes together in context of the overarching statutory scheme and the purpose of the prison employment system, which informs both of these statutes. That's the question I have. As a court, we're not supposed to rewrite legislation if the legislation is constitutional, and if it's explicit on what it says, then whether or not it's wise or there was wisdom in achieving one of the goals that they expressed doesn't give us justification to rewrite it, does it? I would agree with that principle in the abstract. However, the difference is that here we have two statutes that if applied on their face would lead to inconsistent results. One statute says offset part of what they make, and the Department is asserting that the reimbursement statute 376 says we can come back and take it all. And I think there are a couple of cases to resolve the concern. It's more of an interpretive problem, isn't it? Absolutely. It's a matter of interpreting the two statutes both together and in light of the overarching statutory scheme. And one of the, I think, in the Illinois Supreme Court in the State v. McCouche case, which was cited, noted that it's presumed, quote, it is presumed that statutes which relate to the same subject are to be governed by one spirit and a single policy. And then later in the Ferguson v. McKenzie case said that when legislative schemes do not seem completely compatible, they should be interpreted so that meaning and effect is given to each statute. And that is really what we're looking at here is to take both of these statutes, and what's the reasonable way to interpret both of them in light of the overarching goals for prison employment generally? And when the trial court found that the department was precluded from attaching the bank account, the trial court read an exception, an exception into the statute that doesn't exist, correct? That would be one way of interpreting what it did. I think that what we, how I would, what I would say is that under the court's, certain court's analysis, the reimbursement statute 376, you know, is a general statute that generally discusses the reimbursement of prisoner assets and when they can be sought. But essentially that in a case such as this, the de facto effect would be that because these are prison wages that are dealt with specifically in a different statute, that they cannot be attached. And I don't know, in terms of, I don't want to get too much into the cross-appeal. My follow-up question is, because in 3-7-6, there's not a limitation based on the source of where the money came from as far as what the department could seek, right? There's not a distinction about where it came from. There's an amount, there's a res there that you can attach. And one of the reasons I wanted to check on the cross-appeal is because it's more directly relevant to that too. But the subsection E3 of the reimbursement statute is to really, if you really look at the language, it doesn't say that the department can collect any and all assets as broadly defined in that. What it says is that it authorizes the department to initiate, actually that's in subdivision D, to institute proceedings when the department knows or has reason to believe that there are assets broadly defined, that make a portion of which, all or a portion of which, may be used to satisfy the judgment. It's a general statute designed to encompass situations where assets, no matter how they may be garnered, if the department learns that, oh wait, this person has a significant number of assets, maybe we should institute a proceeding. Then when you actually look at the section that discusses what the department can do and what orders they can seek, it is in E3 limited to assets which ought to be subjected to the claim of the department under this section, which obviously anticipates that there are some assets as broadly defined that ought not to be subjected to the claim of the department. And furthermore, in this case, what they're trying to do, what the department is doing, is not just trying to attach the assets that Mr. Hawkins has, which are the only assets that even under the broadest possible reading of E3 could be allowed to be attached, but actually attach assets that his undisputed he does not have on this one or total. I'm sorry. Okay. And would authorize the imposition of a judgment far in excess of statute of authority in which Mr. Hawkins has no ability to pay him. And how that would further the goals of rehabilitation or reducing recidivism are entirely unclear. Well, I mean, in some respects, and I realize you're crossing the bill goes the amount of the judgment, but there's a judgment against him. So to a degree, in fact, a significant degree, your client gets the benefit of this money because it's going to reduce his debt. So isn't that a benefit? If the judgment against him is proper, however, if the judgment against him is a debt that should not have been entered, then he should not be required to spend his assets to pay down a debt that is not rightful against him. And I believe that under, although it goes to the other issue, I'll save some of my discussion for that. One of the parts I wanted to hit on is the incentive of a, in this case, Mr. Hawkins has saved up this money over a long period of time. This is not, the incentive, the proper incentive to give an inmate should not be to spend it as quickly as possible, or to give it away as soon as you get close to $4,000 or $10,000 or whatever the benchmark might be. I don't think that we want to create an incentive to play financial gamesmanship with the amount of the money. To actually provide them with an incentive to work and to save should inform the interpretation of both the statutes. Thank you, Counselor. Counselor. To be honest, my counsel for Mr. Hawkins argued about the public, primarily about the public policy arguments in favor of his reading of the statutes. However, he ignores the single common legislative goal of both statutes, which is to defray the state's costs by requiring inmates to pay their costs of incarceration. Now, this is also a purpose of the Correctional Employment Program. It's written into Section 1 of Article 12, which governs it, and was actually specifically added in 1989 in the same public act, as one of the purposes of the program, in the same act, Public Act 86-450, that added the offset provision to the compensation statute. So that is the legislative goal of the specific provision that Mr. Hawkins would like to use in order to preclude the Department from attaching wages, I'm sorry, attaching his bank account under the reimbursement statute. So the common goal of the two, which is being served here, is to defray the state's costs. And it is no more fair to require the taxpayers to pay his bill, that is the bill for $455,000, to care for Mr. Hawkins, for him committing his crime. The General Assembly has addressed these competing policy concerns when they enacted both of these statutes. Mr. Hawkins' argument, public policy arguments, however reasonable they may be, should be directed to the General Assembly if he wants them to again amend the statutes to create any special exemption for funds which are traceable to prison compensation or prison wages. Also, the Council repeatedly described the statute as the Department seeking all of the wages. And as we pointed out before, the Department doesn't seek all of the wages. It doesn't even internally start to try to refer the case over to the Attorney General until he has assets exceeding $10,000. At that point, assuming he's in the Correctional Employment Program, then he will have not only saved money but spent money on a day-to-day basis and used it for other needs. In addition, then he will also be able, like any other debtor, to use the exemptions to protect any assets that he can. Under your interpretation, nothing prevents the Department from seeking $2,000, right? It's up to the prisoner to claim the exemption, isn't it? It is up to the prisoner to claim the exemption, yes. You have to claim the exemption, don't you? Yes, you do. I mean, like all debtors, they would have to, in their case, whether they pleaded or just raise it during the course of the case. So even if it was under $4,000, if they didn't make the claim? Well, under the internal directives of the Department, they would have never referred it over at that point if he only had $4,000. Those rules could change, couldn't they? They could change, yes, Your Honor, but those aren't the rules right now. But, yes, sir. Now, with regard to the cross appeal that Mr. Hawkins has raised, he claims that because he doesn't have an ability to pay the full judgment or, under his argument, under the circuit court's ruling below, a judgment to pay any of the judgment against him, that in some manner the reimbursement statute didn't authorize the court to issue that judgment. However, he points to no language in the statute below providing the ability to pay, the inmate's ability to pay as an element of a reimbursement action. In the statute, let's assume that the Department's access is limited by statute to these monies. Okay. And if that's the case, doesn't then the statute also say that you can only garner a judgment on monies that are justifiably accessed by the Department? Well, he … In the language. Let me read to you. The director or his designee knows or reasonably believes that a committed person has assets which may be used to satisfy all or part of a judgment. But if these are not assets that are liable to be taken in the first place … If they're not assets, then they're not qualified assets. Well, that's providing the authority for the Department to initially initiate the action. And the language it uses is whether it believes the assets are there to do it and may be used to satisfy part of the judgment, all or part of the judgment. And actually, there was a prior version of the statute prior to 1995 which did have a provision which said, including that it gave authority to the court to issue judgment to the extent of an inmate's ability to pay. Thank you, Your Honor. Thank you. However, the legislature amended it to remove that language from the statute reflecting a legislative intent to the extent there was any such limitation. It doesn't exist. That they can reasonably initiate it if they believe that those monies are available. But if the monies aren't qualified, as it were, then it's not a reasonable initiation, is it? Well, no, Your Honor, because the question is whether when they first initiated it, whether they reasonably believed that the assets were there and that they were available. This would be just like any other creditor. When they initially go after someone for a judgment, usually they think they're going after assets. Now, their action to get the judgment for the debt is not limited by the debtor's ability to pay. Now, there is an extra limitation on our authority to do it that we have to actually reasonably believe that the assets are there. I'm not talking about the ability to pay. I'm talking about are these assets, and I'll leave this language to you, which may be used to satisfy parole of a judgment? Well, correct your question. But if they aren't, if we should determine that these aren't, doesn't that take the judgment away? No, Your Honor, because that was just the provision there was just providing the initial authority to initiate the action and not the court's ability to issue a judgment later on. If you could think, for instance, what about the implications of that? The initiation is wrong. I mean, if you made that decision unreasonably, where does that take you? Well, it wasn't unreasonable when they made it, but the opposite, the problem with the other ruling is if the court, if after the department initiates an action, believes there's assets, they end up being in dispute. And here, okay, in some circumstances, maybe they'll end up being concealed or wasted. Here it is we dispute whether or not they're available because whether or not an exemption applies to them. And then in the course of the proceedings, there's a ruling that, no, these assets aren't there. You haven't proved these assets are there. Therefore, the case is disputed. So you would get a judgment in this case, but the next case you couldn't reasonably initiate. Is that what you would be? Would that be your logic? We couldn't initiate another action until we realized these are not funds that could be reasonably accessed in a case. Then you couldn't move forward. The next case, you couldn't reasonably make that, initiate an action. Correct, Your Honor. If we've lost on a reasonable basis because the court rulings were clear that these are not assets that are available at that point, we couldn't do it. Okay. Thank you. Thank you, Counsel. Counsel, you may proceed. Thank you, Your Honor. So I'd like to focus on the cross appeal and on the issue that counsel was discussing, the difference between when the department can initiate a proceeding and when the department is entitled to obtain a judgment. In fact, there's a limitation in both of those provisions that requires them to be assets that are subject rightfully to the claim of the department. So the authority to initiate an action is discussed in subdivision D of the reimbursement statute, and it says that the director or the director's designee, when he or she reasonably knows or believes that a committed person has assets which may, I'm summarizing, which may be used to satisfy or are part of a judgment under this act, can institute proceedings. And then in subdivision E3, there's a similar limitation that says, that limits the court's ability to enter a judgment to situations where it appears that the committed, quote, it appears that the committed person has any assets which ought to be subjected to the claim of the department under this section. The court may issue an order requiring any person to appropriate any of the assets or a portion thereof towards reimbursing the department. It's clearly referring to the assets that are subject to the claim of the department. And going back to the initiation statute, the initiation subdivision, such an action shouldn't even be initiated unless the person has assets that the department is entitled to collect. Now, here, for the reasons that I discussed earlier in my prior portion, Mr. Hawkins maintains that none of his $11,000 in his account, which are solely derived from prison wages, are subject to the claim of the department, and none of them should be subject to a judgment. In either statute, is there a limitation or a limitation on what assets you go after? Assets in the bank account. I think that under the reimbursement statute, they could only be assets that are subject to the claim of the department. And that it also, that ought to be subject to the claim of the department, I believe, is the actual language, which obviously implies there's some assets which ought not to be subject to the claim of the department. I mean, ought to that there's no further definitions, no definitional section talking about ought. No, not to my knowledge. And the asset, although the definition of assets is brought in, it's notable that it doesn't expressly mention prison wages, and there's another statute that does. But going back to the idea of the $455,000, nobody reasonably believed that Mr. Hawkins had $455,000 at all, much less $455,000 that he earned through prison employment, where they could possibly be subjected to reimbursement under the statute, under any interpretation. I don't think that even when they initiated it, that surely the department didn't believe that he had $455,000. And the department knew how much he generated from prison employment. This is all tracked and monitored. And when he hit $10,000, that's when they decided to initiate the action in the first place, apparently. So certainly the judgment for $455,000 can't stand on the language of the statute, and it would be completely inconsistent with the same public policy goals that inform the entire prison employment system. And just quickly on that point, counsel did mention that there is a single common goal of reimbursement. It's important to note that Section 1 of Article 12 does mention reimbursement, that contributing to the cost of prison employment is one of the goals, but only one of the goals. And even then it uses the word contribute, not pay everything you have towards it. But the court can't elevate one of those expressly enumerated goals to swallow up the other ones, reducing recidivism, increasing training, vocational training, and rehabilitation. And quickly on one last point, I'm sorry. No, go ahead. I just wanted to hit that there is the procedural issue where the statute does require there to be a communication, transmission of information, and a statement of how much money the prisoner has, and that obviously didn't occur here because when the complaint was filed, the department, it was verified to say that Mr. Hawkins had paid nothing, which was inaccurate. It's now the department admits. I'm sorry. Well, no, you're fine. My question is if you think I owe you money, my ability to pay you that money is not an element of your cause of action for the judgment. In other words, my ability to pay has nothing to do with whether or not I owe you the money. I agree in the normal civil context. However, here we're dealing with a specific statute that specifically delineates when the director can initiate an action and limits when the court has authority to enter a judgment against an inmate under this type of statute, and it says it's only when the assets are to be subject to the claim of the department. All right. Thank you. I just have one quick question. You're here from California? Yes, Your Honor. It's a nice trip to come down. It is? Yeah. I came in last night, so. Welcome to Illinois. Thank you, Counsel. Thank you. Our court will take this case under advisement and resolve the matter with dispatch.